IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MUHAMMAD ASLAM, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. 06-4920 |
| v. | )<br>) Judge Joan H. Lefkow |
| BOARD OF EDUCATION OF THE<br>CITY OF CHICAGO and<br>BEVERLY MARTIN, | )<br>) Magistrate Judge Schenkier<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This is an employment discrimination and civil rights case brought by plaintiff Muhammad Aslam against defendants Board of Education of the City of Chicago ("the Board") and Beverly Martin pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Illinois common law. Aslam's verified amended complaint contains seven counts: (1) race discrimination and hostile work environment in violation of Title VII against the Board; (2) national origin discrimination and hostile work environment in violation of Title VII against the Board; (3) religious discrimination and hostile work environment in violation of Title VII against the Board; (4) retaliation for engaging in protected conduct in violation of Title VII against the Board; (5) race discrimination and hostile work environment under Section 1981 against Martin; (6) intentional interference with prospective economic advantage under Illinois law against Martin; and (7) retaliation under Section 1981 against Martin. Aslam also requests reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1981, 1983, and 1988 and Title VII. Now before the court is defendants' motion

1

for summary judgment [# 86]. For the following reasons, their motion will be granted as to Count VI and and denied as to all other counts.

I.      **Background**

In the summer of 2003, defendant Beverly Martin was selected to be the principal at Swift Elementary School, a Chicago Public School, for the term of 2003-2007. Martin nominated Aslam, who had been a teacher in the Chicago Public School system for 12 years, to be her assistant principal. Plaintiff's Response to Defendants' Joint Statement of Uncontested Facts Under Local Rule 56.1 ("56.1 Response") at ¶¶ 4, 6. Aslam is Asian, from Pakistan, and a Muslim. Aslam had assisted Martin in her campaign to become principal. Defendants' Joint Statement of Uncontested Facts Under Local Rule 56.1 ("56.1 Statement") at ¶ 2.[1] He was hired into a 210 funded Assistant Principal position. 56.1 Statement ¶ 8. This funding allows for the assistant principal to be assigned a regular classroom teaching assignment in addition to administrative duties. *Id*. Assistant principals under 210 funding are retained for the four-year term of the principal's contract, subject to renewal provisions. *Id*.

With the opening of the school year in September 2003, Martin assigned Aslam to a number of administrative duties. 56.1 Statement ¶ 9. Aslam participated to some extent in making staffing decisions, arranging for substitute teachers, making budgetary decisions, and generally doing what needed to be done. *Id*. On November 17, 2003, however, Martin told Aslam that due to overcrowding at Swift, she was creating a new sixth grade class and assigning him to teach it. 56.1 Statement ¶ 11. Aslam was to fulfill any administrative duties after the

---

[1] Aslam testified in his deposition that he met with Martin face to face several times during the time she was applying to be the principal at Swift and before she nominated him to be her assistant principal. *See, e.g.*, Aslam Deposition, Ex. 1 to 56.1 Response, at 28-36.

instructional time of the day. *Id*. Martin told Aslam that there were no funds in the budget for an additional teacher. 56.1 Statement ¶ 14. Principals in elementary schools commonly use their one assistant principal as a classroom teacher with a variety of duties, both executive and clerical, to be done either before or after the instructional portion of the school day. 56.1 Statement ¶ 12. Aslam was given an area of the auditorium balcony for his class space. 56.1 Statement ¶ 15.

Also in November 2003, Martin began reassigning Aslam's administrative duties to others. 56.1 Statement ¶ 17. Martin assigned Xavier Owens, an African-American male, to handle disciplinary matters and made him the Dean of Students. 56.1 Statement ¶ 18. Owens had been teaching a seventh-grade class until November 18, 2003. 56.1 Response ¶ 18. He was removed from that position and two substitutes were used to teach his class for the rest of the year. Martin Deposition, Ex. 2 to 56.1 Response, at 76-77; Gallo Deposition, Ex. 3 to 56.1 Response, at 65. Martin took the assistant principal's walkie-talkie from Aslam and gave it to Owens. Plaintiff's Local Rule 56.1(b)(3)(B) Additional Facts that Require Denial of Summary Judgment ("Additional Facts") ¶ 10. She referred to Owens as an "Administrator" and listed him underneath her own name on the cover of the 2004 Commencement Program instead of listing Aslam. Additional Facts ¶ 12. She also took away Aslam's keys to the school office, the assistant principal desk, and the school building. Additional Facts ¶ 7.

In his deposition, Aslam testified that Martin made several inappropriate comments to him during the time that he was performing the assistant principal's duties (i.e., during the Fall of 2003). First, in the context of resolving a disciplinary matter with some students and their parents, Martin told Aslam that he didn't "know how to deal with black parents." Aslam

3

Deposition, Ex. 1 to 56.1 Response, at 65. She also said, "I need a black role model person in your place." *Id*. Defendants dispute that Martin made these statements. In Martin's deposition, she denied making them and said, "That's an absolute lie. [Aslam] should be ashamed to even say." Martin Deposition, Ex. 2 to 56.1 Response, at 54. In relation to another disciplinary incident, in which a parent complained about her child being suspended, Aslam testified that Martin said, "I think some parents are right. I have hired a Muslim in this school." Aslam Deposition, Ex. 1 to 56.1 Response, at 68. Defendants deny this. Finally, Aslam testified that on the day that Martin took away his keys, she said, "you're not from the same culture... you stink." Aslam Deposition, Ex. 1 to 56.1 Response, at 124. Defendants deny this statement also.

Martin never allowed Aslam to attend any of the Area 2 Assistant Principal Meetings, sending instead Owens, Lisa Wickell (the Swift school counselor), and other staff members. Additional Facts ¶ 13. She also stopped sending Aslam to represent the administration at student Individual Education Plan meetings. Additional Facts ¶ 14. At least after the Spring of 2004, Martin did not refer to Aslam as the assistant principal. Defendants' Response to Additional Facts ¶ 25. Martin made Aslam spend the 2004-2005 spring vacation sitting at the security desk in the school's front entrance until 3:00 p.m. every day despite the school being closed. Additional Facts ¶ 31. Aslam continued to be paid an assistant principal's salary, between $80,000 and $90,000, each of the four years he was at Swift. 56.1 Statement ¶ 37.[2]

---

[2] Aslam makes other allegations as well, including that Martin refused to submit an immediate supervisor questionnaire that was necessary for his application to the Board to be a candidate for principal positions; that Martin intentionally delayed Aslam's trip to Pakistan when Aslam's father passed away; and that Martin forced him to report to the school counselor every day after school and told the counselor to give him busy work. The record regarding these incidents is unclear and it is unnecessary to address them for purposes of this motion.

Defendants contend that Martin took away Aslam's administrative duties because she was dissatisfied with his performance, including his ability to resolve disciplinary matters. In support of this argument, they cite to Martin's deposition. *See* 56.1 Statement ¶¶ 10, 17. Aslam testified in his deposition that while he was performing administrative duties, Martin never expressed any dissatisfaction with his ability to resolve disciplinary matters. Aslam Deposition, Ex. 1 to 56.1 Response, at 57. During the time that Aslam was a full time teacher, Martin received complaints from students and parents regarding Aslam's demeanor, attitude, and teaching performance. 56.1 Statement ¶ 21. She gave him an itemized list of improvements for his personal behavior. *Id*.

It is apparent from the record that Martin had her own interpersonal issues with her superiors. Jeannie Gallo was the Area Instructional Officer, or supervisor of the geographic region in which Swift is located. 56.1 Statement ¶ 24. Gallo perceived that Swift had a high teacher turnover rate and that Martin was generally difficult to get along with and did not treat people with respect (including Gallo herself). 56.1 Statement ¶ 25. In the Spring of 2004, Martin was issued a Principal Corrective Action Plan. Ex. 9 to 56.1 Response. The Plan said, "Based on an examination of a variety of factors, it has been determined that deficiencies exist in your principalship of the Swift School that have adversely affected the school's academic performance." *Id*. at 239. Among the "conditions in need of change" that were outlined in this Plan was "Interpersonal Effectiveness," and it was suggested that Martin "[d]evelop a working relationship with the A.P. Treat the A.P. with dignity by making him part of the team." *Id*. at 242. In an addendum to the Plan, dated March 31, 2004, it was also noted that "[y]ou have a teacher working as a disciplinarian and Assistant Principal." *Id*. at 237.

Gallo wrote a letter to Martin dated March 30, 2004 "in response to your letter dated March 25, 2004 in which you [Martin] make several allegations that are misguided, false and a misrepresentation of the truth." Ex. 22 to 56.1 Response, at 244. Gallo said, among many other things,

> As your supervisor, I believe your leadership ability is questionable as evidenced by some of your decisions. You practice unsound pedagogy as evidenced in sacrificing the children for personal vendettas. You do not follow Board of Education rules and policies as evidenced in your repeated failure to adhere to them. You lack respect and professionalism in your treatment of people.

*Id.* at 247; *see also* Exs. 36, 37 to 56.1 Response.

In January 2004, Aslam complained to Gallo and the Board of Education about discrimination and harrassment. Aslam Deposition, Ex. 1 to 56.1 Response, at 145-47, 161, 219-20; Gallo Deposition, Ex. 3 to 56.1 Response, at 19; *see also* Exs. 19, 20, 32 to 56.1 Response. On June 15, 2004, his attorneys sent a detailed letter to the Board regarding these issues, in which Aslam's specific allegations of Martin's inappropriate comments, among other allegations, were described at length. Ex. 21 to 56.1 Response. Aslam filed an EEOC discrimination charge on July 29, 2004. 56.1 Statement ¶ 35. He filed a second EEOC charge on August 8, 2006. *Id*.

## II. Discussion

The defendants here, as the summary judgment movants, bear the initial burden of demonstrating that there is no genuine issue of material fact requiring trial on Aslam's claims. *Creditor's Committee of Jumer's Castle Lodge, Inc.* v. *Jumer*, 472 F.3d 943, 946 (7th Cir. 2007); *Venters* v. *City of Delphi*, 123 F.3d 956, 962 (7th Cir. 1997). If they can do that, the burden will

6

then shift to Aslam to point to evidence in the record that would allow a rational trier of fact to find in his favor on a material issue. *Id.*

Claims for discrimination under Title VII "may be proven either directly ... or indirectly under the burden-shifting method established in *McDonnell Douglas*." *Scaife* v. *Cook County*, 446 F.3d 735, 739 (7th Cir. 2006) (citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Under the direct method, a plaintiff may prove his case through direct evidence (such as an admission by the decision maker that his actions were based on unlawful animus) or through circumstantial evidence, "i.e., evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rogers* v. *City of Chicago*, 320 F. 3d 748, 753–54 (7th Cir. 2003) (citations omitted). Under the direct method, the plaintiff's evidence must be sufficient to permit a jury "to conclude that the employer acted because of a forbidden animus." *Rogers,* 320 F.3d. at 754.

Similarly, a claim for retaliation may be proven indirectly or directly. *Scaife,* 446 F.3d at 739. "Under the direct method, a plaintiff is required to show that '(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two.'" *Dorsey* v. *Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). The plaintiff may use either direct or circumstantial evidence to do so. *Id.*

To prove discrimination under the *McDonnell Douglas* indirect method, a plaintiff must first make out a prima facie case, such as by showing that "(1) she is a member of [a] protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated [] employees [not in the protected class(es)] more favorably." *Peirick* v. *Indiana Univ.-Purdue Univ. Indianapolis*

7

*Athletics Dept.*, 510 F.3d 681, 687 (7th Cir. 2007) (citations omitted); *Barricks* v. *Eli Lilly & Co.*, 481 F.3d 556, at 559 (7th Cir. 2007). To establish a prima facie case of retaliation under this method, the plaintiff must show that "(1) he engaged in statutorily protected activity; (2) he was performing his job according to his employer's legitimate expectations; (3) he suffered a materially adverse action; and (4) he was treated worse than a similarly situated employee who did not engage in statutorily protected activity." *Graham* v. *AT&T Mobility, LLC*, Nos. 06-3020, 06-3734, 2007 WL 2565999, at *3 (7th Cir. Sept. 6, 2007). Thus, the second, third, and fourth elements of a prima facie case of retaliation are essentially the same as those of a prima facie case for discrimination. The plaintiff bears the burden to establish this prima facie case. *Scaife*, 446 F.3d at 739.

In either the discrimination or the retaliation context, "once the plaintiff has established a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action." *Scaife*, 446 F.3d at 739. If the defendant provides a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is merely a pretext for unlawful discrimination. *Scaife*, 446 F.3d at 739–40. "To show pretext, plaintiff must show more than defendant's decision was mistaken, ill considered, or foolish, and as long as the employer honestly believes [its stated] reasons, pretext has not been shown.... The only concern in reviewing an employer's reasons for [a] termination is the honesty of the employer's beliefs." *Kodl* v. *Bd. of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007).

Defendants have moved for summary judgment based on their contention that there is no genuine issue of material fact that Aslam cannot prove his claims of discrimination, hostile work

8

environment, or retaliation using any available method. Their arguments in support of this contention are conclusional and ignore obvious disputes of material fact between the parties, making summary judgment in this case inappropriate.

One of defendants' main arguments is that Martin properly took away Aslam's administrative duties and assigned him to be a full time teacher solely because she was dissatisfied with his performance and needed another sixth grade teacher. In the same vein, they argue that Aslam cannot show that he was meeting the Board and Martin's legitimate business expectations. In their memorandum in support of their motion, defendants say that Aslam cannot "identify one remark or act that was directed to him because he is Asian," and he "has no answer for the fact that Martin interviewed him and hired him voluntarily, thus dispelling any notion that she harbored secret anti-Asian hostilities." Mem. at 10. They cite cases for the proposition that it is the employer's assessment of the employee's performance that matters, not the employee's self-assessment. *See* Mem. at 7.

Defendants' contention that Martin took away Aslam's administrative duties because she was dissatisfied with his performance is based almost exclusively on Martin's deposition testimony and is contradicted by Aslam's testimony. *See* 56.1 Statement ¶¶ 10, 17; Additional Facts ¶¶ 39-40. This dispute is therefore one of credibility as between Martin and Aslam. Furthermore, Aslam's own testimony about the comments that Martin made to him regarding his race, national origin, and religion shows that there is a genuine issue of material fact regarding whether Martin took away his administrative duties for legitimate reasons and whether he was fulfilling her legitimate business expectations. *See, e.g.*, *Payne* v. *Pauley*, 337 F.3d 767, 771 (7th Cir. 2003) (a plaintiff's deposition can in some cases defeat summary judgment).

9

Aslam has testified about at least three comments made by Martin, including one about his culture that she made contemporaneously with taking away his keys. Defendants ignore the relevance of these comments in their opening memorandum. Martin's denial of making the comments cannot eliminate them as disputed facts; instead, her denial merely underscores the existence of such disputes (especially in conjunction with the evidence in the record regarding Martin's own interpersonal issues and her need to treat Aslam with dignity). Additionally, defendants' contention that Martin's reason for making Aslam a teacher was overcrowding is belied by the fact that she removed Owens from his position as a seventh grade teacher and replaced him with substitutes for the rest of the year. Furthermore, a jury could find facts such as Martin's requirement that Aslam sit at the security desk during spring break to be evidence of her hostile state of mind.

Defendants' second argument is that Aslam suffered no adverse employment action. They contend that giving teaching assignments to assistant principals is a common practice in the Chicago Public Schools. Additionally, they argue that not giving Aslam a positive recommendation for his application to be considered for principalships cannot be an adverse employment action.

The Seventh Circuit has held that a material adverse employment action can include "cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and [] cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating,

degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment." *O'Neal* v. *City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004) (citing *Herrnreiter* v. *Chi. Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002)). The undisputed facts here would allow a reasonable jury to find that Aslam was effectively demoted and replaced with Owens. Aslam was stripped of the indicia of his position, including his keys, walkie-talkie, office, and title (at least as it appeared on some school documents), as well as of most of his administrative responsibilities, and was required to perform tasks that a jury could find demeaning or unsuitable for an assistant principal.

Defendants also argue that Aslam cannot show that similarly situated employees outside of Aslam's protected class were treated more favorably than he was. In his response, Aslam notes that there were no other assistant principals at Swift, but points to Owens as being similarly situated because Owens was of similar stature and was his *de facto* replacement. Defendants dispute the appropriateness of using Owens because Owens was not an official assistant principal and did not receive an assistant principal's salary or benefits. In this situation, the similarly situated employee analysis must be flexible. *Barricks* v. *Eli Lilly &Co.*, 481 F.3d 556, 559-60 (7th Cir. 2007) (internal citations omitted) ("The 'similarly situated' test is a flexible, commonsense inquiry whose requirements vary from case to case. Its purpose is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play."). Defendants have not fulfilled their initial burden to show that Aslam cannot satisfy the similarly situated employee element of the indirect method of proof.

With regard to Aslam's retaliation claims, defendants merely say, "Aslam has admitted unequivocally that Martin treated him exactly the same after his complaints as she did before," Mem. at 13 (citing 56.1 Statement ¶ 36), and argue that Martin's inability to give Aslam a positive recommendation for his principal candidacy application was not an adverse action taken in retaliation for protected activity. The court has reviewed in context the section of Aslam's deposition on which paragraph 36 of defendants' Local Rule 56.1 Statement relies. It does not support a finding that Aslam made the unequivocal admission characterized by defendants. Additionally, Aslam has identified several alleged actions taken by Martin that occurred after he made his complaints to Gallo and the Board. *See* Response at 11. In this case, the question of whether these actions were taken in retaliation for his complaints is one for the jury.[3]

Defendants have also moved for summary judgment on Aslam's Illinois tort law claim for tortious interference with prospective economic advantage. This claim is based primarily on Martin's refusal to fill out and submit a questionnaire for immediate supervisors to the Board's Office of Principal Preparation and Development that was a mandatory component of Aslam's application to be included on the Board's principal eligibility list. He also cites Martin's refusal to allow him to attend professional development meetings or to perform the typical tasks of an assistant principal, which would have prepared him for a principalship. In his response, Aslam says he "held a reasonable expectation of entering into a contract to serve as a principal in one of the Board's schools, because (a) he was a long-term Board employee who had scrupulously and methodically worked his way to principal eligibility by earning advanced degrees and his Illinois

---

[3] Defendants also argue that Martin is entitled to qualified immunity. As they recognize, the first step in determining whether an official is entitled to qualified immunity is to ask whether the facts show that the official violated a constitutional right. *See* Mem. at 9. Because that question cannot yet be answered, Martin is not entitled to a dismissal on qualified immunity grounds at this time.

Type-75 Certificate; (b) he had applied for and attained principal eligibility with the Board; (c) he had attained the position of AP; and (d) the Board implements measures designed specifically to groom its APs for eventual principal status." Response at 20 (citations to the record omitted).

According to controlling Illinois Supreme Court law, there is no genuine issue of material fact that the defendants are entitled to judgment as a matter of law on this claim. To state a cause of action for intentional interference with a prospective economic advantage, a plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson* v. *Vanden Dorpel*, 667 N.E.2d 1296, 1299, 172 Ill. 2d 399, 406-07, 217 Ill. Dec. 720 (1996) (citations omitted). Regarding the first, "expectancy" element, the Illinois Supreme Court has stated that "[t]he hope of receiving a job offer is not a sufficient expectancy" even to allege a claim for interference with a prospective employment relationship. *Anderson,* 667 N.E.2d at 1299. For example, in *Anderson*, the plaintiff alleged that she was the "leading candidate" for a certain position. *Id.* Indeed, she claimed that the employer sought her out for the position, interviewed her, and told her that her interviews had gone well. *Id*. at 1299-1301. The plaintiff further alleged that she did not receive the job because her current employer made false statements concerning her work performance to the prospective employer. *Id.* at 1298. The court held that "[t]he hope of a job offer was not a sufficient expectancy." *Id.* at 1299.

Similarly, "Federal courts applying Illinois law have repeatedly applied *Anderson* to reject claims for intentional interference with prospective business advantage where the plaintiff does not have an actual job offer but instead has merely the hope of receiving a job offer." *Myers* v. *Phillips Chevrolet, Inc.*, No. 04 C 0763, 2004 WL 2403126, at *3 (N.D. Ill. Oct. 26, 2004) (Filip, J.) (citations omitted). Cases cited by *Myers* include *Fredrick* v. *Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998) (finding no expectancy because plaintiff "alleges merely that he wished to continue working as a commercial pilot. He does not claim that he had been offered a job by any other airline, or even that he had interviewed or applied for such positions."); *Emery* v. *Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 02 C 9303, 2003 WL 22176077, at *10 (N.D. Ill. Sept.18, 2003) (Gottschall, J.) (collecting cases); and *Croft* v. *Inlight Risk Mgmt., Inc.*, No. 01 C 1766, 2002 WL 226859, at *6 (N.D. Ill. Feb.14, 2002) (Kennelly, J.).

To be sure, *Anderson* did not hold that it was absolutely necessary for the plaintiff to allege a job offer in order to sustain a claim for interference with a prospective employment relationship. Even though the *Anderson* court said that "[t]he hope of receiving a job offer is not a sufficient expectancy," 667 N.E.2d at 1299, it also said it was making its decision "[w]ithout determining here whether in all cases a job applicant must have had a firm offer in hand to state a cause of action for intentional interference with prospective economic advantage." *Id.* Regardless, in this case, what Aslam is relying on is merely the hope of being eligible to receive a job offer in the future. His contentions relate to his application to be included on the list of people who might later receive interviews and job offers. Moreover, Aslam had previously been on the principal eligibility list from 2002 to 2004 and had not received a job offer for a principal position. 56.1 Statement ¶ 34. These facts are weaker than those that were involved in both

*Anderson*, where the plaintiff had already had several interviews with the prospective employer, and *Fredrick*, where the plaintiff was already a commercial pilot and wanted to get a job with another airline. And in *Anderson*, the court also cited with approval *Werblood* v. *Columbia College*, 536 N.E.2d 750, 180 Ill. App. 3d 967, 129 Ill. Dec. 700 (Ill. App. Ct. 1st Dist. 1989), where "the court determined that the plaintiff's expectation of a renewal of her current college employment contract was not sufficient to support a cause of action for intentional interference, even though officials of her college had assured her that her employment there was secure." 667 N.E.2d at 1300.

**III. Conclusion and Order**

For the foregoing reasons, defendants' motion for summary judgment [# 86] is granted in part and denied in part. Judgment is entered for defendants on Aslam's claim for tortious interference with prospective economic advantage (Count VI of Aslam's complaint). This case will be called for a status hearing to discuss the most expeditious way to resolve it, such as through settlement or a prompt trial date, on September 16, 2008 at 9:30 A.M.

Dated: August 25, 2008                    Enter: _____
                                                 Joan H. Lefkow
                                                 United States District Judge